No. 26,815.

MARY SWEENEY, *Appellee*, v. LEO VANHOLE, *Appellant*.

SYLLABUS BY THE COURT.

1. BOUNDARIES — *Watercourse — Channel Changed by Avulsion — Evidence.*
Land was sold under a metes and bounds description, one call being the
following of the bank of the Kansas river. In litigation involving the ques-
tion whether the original bank of the river was intended, or the bank of a
new channel cut by avulsion, the evidence is held to justify a finding that
the latter was meant.

2. WATERS — *Avulsion — Title of Riparian Owner.* The change of channel hav-
ing been by avulsion the title to its bed was not affected, and upon a new
change of the river to a different channel did not pass to one who had pur-
chased land bordering thereon.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opin-
ion filed October 9, 1926. Affirmed.

*W. F. Challis,* of Wamego, and *Maurice Murphy,* of Topeka, for the ap-
pellant.

*A. E. Crane,* of Topeka, and *B. C. Mitchener,* of St. Marys, for the appellee.

The opinion of the court was delivered by

MASON, J.: A dispute arose as to how much land was covered by
a deed executed in 1908 by Mary Sweeney to Leo Vanhole. She
brought this action of ejectment against him to recover the tract in
controversy. Judgment was rendered in her favor and he appeals.

Prior to 1903 the Kansas river ran in a southeasterly direction
south of the land owned by the plaintiff, forming its southern bound-
ary. The flood of that year caused a sudden change in the channel
of the river, which was shifted a little to the north at a distance
varying from something over 400 feet at the west and to something
less than 200 at the east end. The approximate relative position of
the two channels is shown by the sketch on the opposite page, made
from a plat introduced in evidence.

There was testimony that the plat from which this sketch is made
was accurate, but it seems probable that the two channels were
nearer together at the east side than is here indicated. The deed
described by metes and bounds the land conveyed, the boundary
line beginning at the center of section 9 and following the directions

Boundaries, 9 C. J. p. 286 n. 91. Navigable Waters, 29 Cyc. p. 353 n. 98.

N.W. ¼ of S.E. ¼, Sec. 9, Twp. 10, R. 12.

and distances indicated approximately (although not with entire accuracy as to distances) by the double line on the sketch from that point to the one designated as B. The line from A to B is described in the deed as "thence south thirty-three degrees west four chains and five links, to bank of Kansas river." The description in the deed then continues: "thence along said north bank of the Kansas river in northwesterly direction to intersection of west line of southeast quarter of section 9, township 10, range 12, thence north on said line to point of beginning, containing 12.8 acres, more or less."

1. The defendant claims that the north bank of the Kansas river referred to in the description in the deed is the north bank of the old channel according to the government survey of 1862. The plaintiff contends that the reference is to the channel cut in 1903 as shown on the foregoing plat, so that the land in controversy is that lying between the north bank of the original river bed and the north bank of the new channel, amounting to some ten acres. While no special findings were made, the trial court manifestly held in favor of the plaintiff on this issue, and the holding is supported by the evidence. A plat of the boundary according to the deed, and of the old north bank of the river as shown by the government survey, was introduced and shows that the south end of the line A-B does not reach the original river bed by two and a half chains, but is upon what appears to be the meandered line of the north bank of the channel referred to as cut in 1903. It was shown that later in 1903 the channel again shifted to a point some two miles south, although some water remained in the new channel of which we have been speaking, and also in the original river bed, and at times of flood the water filled both channels and covered the intervening land as well. It is not important to consider which of the three channels referred to could with the greatest propriety and accuracy be described as the Kansas river. Plainly the newest one, two miles to the south could not have been intended. The newer of the two that might possibly have been in the mind of the draftsman of the instrument could as appropriately as the other be so designated, and the terminus of the part of the boundary line that is indicated by explicit courses and distances seems clearly to show that to have been the intention.

The defendant invokes the rule that in the case of inconsistent calls in a metes and bounds description courses and distances must yield to monuments, and especially to natural objects. If here the deed had in terms made the south boundary of the land conveyed the north bank of the Kansas river as it was located when the government survey was made that principle would doubtless apply. But in the situation shown by the evidence as already stated the phrase "north bank of the Kansas river" applied at least as readily to the nearer and more recent channel as to that which was further away and older.

In the defendant's brief it is said that the trial court assumed without evidence that there was a difference between the description by course and distance and the material objects which were named

as boundaries in the deed. As we see it, the evidence showed that the description of a material object named as a boundary in the deed (the north bank of the river) might apply to either of two objects (the bank of the original channel and the bank of the newer one); and that the courses and distances were consistent with one and inconsistent with the other. In that situation there seems no room for doubt that the interpretation to be adopted is the one which avoids an inconsistency.

There was also evidence that a survey was made before the deed was drawn, showing 12.8 acres north of the new channel. The price paid was $1,916, of which $300 was on account of buildings. The agreed price was $125 an acre. This leaves $16 of the amount unaccounted for, although it may have been included in the allowance for the buildings. The plaintiff says in effect that the survey was to ascertain how many acres the defendant was buying. The defendant in effect says he was buying the whole tract down to the old river bed, but was paying for it at the rate of $125 an acre for the then tillable land, which extended only to the new channel.

The plaintiff paid no taxes on the land after 1908, and the will by which she acquired title described the whole tract as containing fourteen acres. These considerations do not appear to us, however, as in conflict with the conclusion we have announced.

2. The suggestion is made that when the water receded from the channel of 1903 the bed became an accretion to the land north of it and passed as appurtenant thereto by the plaintiff's deed to the defendant. This theory is untenable, for the change made in the bed of the river was by avulsion and the title to the bed of the new channel remained in the original owner. (*State, ex rel., v. Turner*, 111 Kan. 302, 207 Pac. 223.)

The judgment is affirmed.